[Civ. No. 13557.   Second Dist., Div. One.   July 29, 1942.]

MARGUERITE MADELEINE MAYO, Appellant, v. INTERMENT PROPERTIES, INC. (a Corporation) et al., Respondents.

Baldwin Robertson for Appellant.

Clayton L. Howland and Everett V. Prindle in pro. per. and Earle M. Daniels and Julius V. Patrosso for Respondents.

YORK, P. J.—The instant action was brought by Marguerite Madeleine Mayo, a minority stockholder, for an injunction, for declaratory relief and for the removal of di-

rectors of respondent Interment Properties, Inc., pursuant to subdivision 3, section 310 of the Civil Code.

From a judgment rendered against her, she prosecutes this appeal upon the grounds:

(1) A resigned director cannot vote upon the choice of his successor;

(2) The affirmative vote of one of two remaining directors does not constitute a majority;

(3) "Inasmuch as an interested officer and director may not himself vote that corporate funds be paid to him, the acts of his substituted director, chosen by him to fill his own vacancy, for the purpose of voting on such resolution, are likewise void."

The following brief résumé is taken from the findings of fact of the trial judge:

Interment Properties, Inc., a California corporation, was organized September 12, 1938, and is engaged in the cemetery business deriving its principal income from the sale of cemetery lots by Roosevelt Memorial Park Association. The total authorized capital of said corporation is 2,500 shares of stock issued August 5, 1940. Appellant is the owner of 1,218.75 shares, and the remainder of the issued and outstanding shares of stock is owned by Fred A. Ballin, Jr., Clayton L. Howland, Everett V. Prindle, Aileen Brown and Iola G. Orton. Between July 12, 1939, and February 4, 1941, the directors of the corporation were Fred A. Ballin, Jr., Everett V. Prindle and Luther T. Mayo. Luther T. Mayo did not own any stock and the articles of incorporation provided that no person should be qualified to act as a director unless he was a stockholder of the said corporation. On and prior to February 4, 1941, the officers of the corporation were Everett V. Prindle, president, Fred A. Ballin, Jr., secretary, and Luther T. Mayo, vice-president.

Respondent Prindle is an attorney associated in the practice of law with respondent Howland under the name and style of Howland & Prindle, and on or prior to February 4, 1941, respondents Ballin and Orton were or had been clients and personal friends of respondent Prindle.

On January 28, 1941, at a meeting of the board of directors of respondent corporation, respondent Prindle presented an itemized statement of legal services rendered by him and respondent Howland on behalf of the said corporation amounting to the sum of $5,700, and stated to the board of directors

that, in view of the long period of time covered thereby, the matter of fees should be definitely settled; that he was not insistent that the statement be accepted in the amount rendered and that he would abide by whatever determination the board might reach with reference to the amount and the method of payment. At that meeting the bill for attorneys' fees was considered and discussed but no vote was taken thereon, Luther T. Mayo refusing to discuss either the amount or manner of payment of said bill. The special meeting of January 28, 1941, was called for the express purpose of considering the payment of attorneys' fees and due and legal notice thereof was given, as required by law and the by-laws of the corporation. Thereafter, on January 31, 1941, respondent Prindle, as president of the corporation, called a special meeting of the board to be held on February 4, 1941, for the stated purpose of considering the matter of payment of attorneys' fees and other business. At said meeting there were present: Everett V. Prindle, Fred A. Ballin, Jr., Luther T. Mayo and Iola G. Orton, the last named having been requested to be present by Everett V. Prindle. Thereupon respondent Ballin resigned as secretary, respondent Prindle resigned as president, and said Ballin was elected president by the board. Respondent Prindle submitted his written resignation as a director to take effect upon the election and qualification of his successor; said resignation was accepted to take effect as stated, whereupon upon motion of said Ballin, seconded by said Prindle, the respondent Iola G. Orton was nominated to fill the vacancy on the board to be created by the resignation of respondent Prindle. No further nominations were made and upon being put to a vote the nomination of said Orton received the affirmative votes of Ballin and Prindle but Luther T. Mayo refused to vote thereon. Thereafter, at said directors' meeting, respondent Ballin nominated respondent Orton as secretary of the corporation, which nomination was duly seconded by said Orton and upon being put to a vote the said nomination received the affirmative votes of Ballin and Orton and Luther T. Mayo refused to vote thereon. After such elections, the said directors and respondent Prindle proceeded to discuss the matter of the bill for attorneys' fees for services rendered to and on behalf of the corporation. Following such discussion and upon motion duly made and seconded, and upon the affirmative votes of Fred A. Ballin, Jr., and Iola G. Orton, and the negative vote of Luther T. Mayo,

a resolution was adopted approving the bill for attorneys' fees rendered to said corporation in the sum of $5,200, with the express provision that the manner of payment of said bill be left to the further discussion and approval of the board of directors. Thereafter, by the unanimous vote of all of the directors, Ballin, Orton and Mayo, a resolution was adopted authorizing the opening of a bank account for said corporation Interment Properties, Inc., in the American Branch of the California Bank, by the terms of which resolution it was further provided that funds on deposit therein might be withdrawn upon checks signed by said Ballin, as president, or Luther T. Mayo, as vice-president, and Iola G. Orton, as secretary. Notice of the adoption of said resolution was thereafter delivered to the said bank.

The court further found that none of the acts as above set forth was unlawful, or that said Prindle, Ballin and Orton, or any of them, unlawfully planned, schemed or conspired among themselves to do or perform said acts or any of them; that it is not true that the said resolution approving the bill for attorneys' fees in the sum of $5,200 "is or was unlawful, illegal, fraudulent or void in whole or in part. That the defendant, Iola G. Orton, is a stockholder of Interment Properties, Inc., owning and holding 101.5625 shares of the issued and outstanding capital stock thereof, and as such was on the 4th day of February, 1941, and ever since has been qualified to act as a director of said corporation, and that at all times since her election as a director of said corporation on the 4th day of February, 1941, said Iola G. Orton has been and now is a duly elected, qualified and acting director of Interment Properties, Inc., and . . . the duly elected, qualified and acting Secretary of said corporation."

The court also found that neither Ballin nor Orton in approving said bill or in any vote cast or action taken by them as directors at said meeting held on February 4, 1941, or at any time, acted under the domination or control of respondent Prindle, or as his agents, or dummies, but that they exercised their own independent judgment and honest discretion.

The prayer of the complaint herein sought a judgment decreeing (1) that respondent Orton is not a director or officer of the corporation; that respondents Prindle, Ballin and Orton be removed as directors and officers thereof and be barred from re-election for a period of seven years; (2) that the pur-

ported resolution dated February 4, 1941, approving the attorneys' bill be declared void and that respondents be restrained from paying any moneys of the corporation by reason of or under the authority of said resolution; (3) that said corporation is not indebted to respondents Prindle or Howland & Prindle by reason of any contractual obligation, and that the trial court upon proof adjudge and determine what sums, if any, said corporation owes to said respondents.

As hereinbefore stated, the trial court entered its judgment denying the relief sought by appellant in her complaint.

Section 4, article III of the by-laws of respondent corporation follows verbatim the wording of a portion of section 306 of the Civil Code, to wit: "The shareholders may elect a director or directors at any time to fill any vacancy or vacancies not filled by the directors. If the board of directors accept the resignation of a director tendered to take effect at a future time, the board or the shareholders shall have power to elect a successor to take office when the resignation is to become effective."

Appellant argues that while a "board may, prior to the actual occurrence of a vacancy, elect a successor, the member of the board whose resignation or expiration of office creates the vacancy cannot vote upon his successor . . . only those members of the board who will be in office upon the occurrence of the vacancy can vote to fill the vacancy."

In discussing section 306 of the Civil Code, it is said in 6A Cal. Jur. 1064, section 590: "The statute now in terms contemplates resignations by directors, and that they may be made effective at a future date. The right to resign is not cut off by provisions that the term shall continue until appointment of a successor. The board of directors has power to accept the resignation of a director, and to elect his successor at the same meeting, but a director who has tendered his resignation to take effect upon acceptance does not cease to be a director until acceptance of his resignation, and may therefore participate in a meeting and fill out a quorum. (*Seal of Gold Min. Co.* v. *Slater*, 161 Cal. 621 [120 Pac. 15].)"

Appellant relies upon a number of decisions announcing the rule that a public board or officer may not appoint one to a public office to fill a vacancy which will not occur until after the expiration of the term of office of the appointing board or officer. Typical of these is the case of *People* v. *Ward*, 107 Cal. 236 [40 Pac. 538], which involved an attempt by a board of

supervisors, whose term óf office was about to expire, to appoint one to the office of district attorney to fill a vacancy which would not occur until after the expiration of the supervisors' terms of office.

The method of filling vacancies in the boards of directors of private corporations is controlled by the provisions of section 306 of the Civil Code, above referred to, which authorizes the board of directors in office to appoint a director to fill a vacancy which will occur when a resignation tendered to take effect at a future time becomes effective.

Under the rule laid down by said section, respondent Prindle was qualified to act as a director of the corporation until the election and qualification of his successor. As a result, respondent Orton was elected a director by the affirmative votes of two directors, viz: Ballin and Prindle, a majority of the board of directors which was composed of three members.

Having been duly elected to the board of directors by a majority of the membership thereof, it was incumbent upon respondent Orton, a stockholder of record, to use her own discretion in casting her vote approving the payment of attorneys' fees owing to respondent Prindle and his associate. As heretofore noted, the trial court found that neither respondent Ballin nor respondent Orton in approving said bill for attorneys' fees acted under the domination or control of respondent Prindle, or as his agents, or dummies, but that they exercised their own independent judgment and honest discretion. This finding is supported by evidence produced at the trial.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.