[Civ. No. 46195. First Dist., Div. One. Nov. 8, 1979.]

JOHN R. MORRISON, Plaintiff and Appellant, v.
DONALD R. MICHAEL, as County Clerk, etc., et al., Defendants and Respondents;
JOHN E. BUFFINGTON, Real Party in Interest and Respondent.

COUNSEL

Edward E. Parsons for Plaintiff and Appellant.

Raymond W. Schneider, County Counsel, George Deukmejian, Attorney General, L. Stephen Porter, Assistant Attorney General, and Vance W. Raye, Deputy Attorney General, for Defendants and Respondents.

Dale A. Reinholtsen and William H. Carson, Jr., for Real Party in Interest and Respondent.

OPINION

NEWSOM, J.—The present appeal is from a judgment denying a petition for a peremptory writ of mandate directing the Secretary of State to certify the result of the June 6, 1978, primary election for Office No. 2 of the Municipal Court for the Eureka Judicial District, and requiring the Secretary in substance to do all things necessary to facilitate plaintiff's assumption of that office.

In 1975 the California Legislature added a second office to the Eureka Judicial District, the vacancy thus created to take effect on January 1, 1976.

On May 6, 1976, the Governor appointed Lawrence A. Truitt to that office, and since the election scheduled for November of that year was less than 10 months' away, under Government Code section 71180 no election was held.[1]

When the office again opened for election in 1978, Judge Truitt and appellant both qualified as candidates. But on May 11, 1978, a few weeks before the election, the Governor appointed Truitt to a superior court vacancy in the same county, and then appointed John Buffington, the incumbent district attorney, to fill the vacancy created by Truitt's elevation.

---

[1]Government Code section 71180 reads in pertinent part: "If the office to which any person so appointed was not previously occupied, he shall hold office until his successor is elected at the general state election next succeeding the occurrence of the vacancy and qualifies. *No successor to such appointee shall be elected at any election held within 10 months of the date of the occurrence of the vacancy.*" (Italics added.)

Since, again, less than 10 months remained before the impending June 6, 1978, election when Buffington assumed the position on May 23, 1978, the Secretary of State, in compliance with her construction of the terms of Government Code section 71180, refused to certify the results of the June 6, 1978, election in which appellant "defeated" Truitt. It is this refusal to certify that appellant assigns as error, and which we examine in the following discussion.

## I

■ Appellant's first contention, in his own words, is that "the court erred in ruling that the departure of an original appointee to a municipal court office creates a successive vacancy, and does not merely reopen the original vacancy...."

In our view this contention is contrary to the express language of Government Code section 71180, as well as to an unbroken line of California case authority culminating in *Barton v. Panish* (1976) 18 Cal.3d 624 [135 Cal.Rptr. 65, 557 P.2d 497]. There, a vacancy was created by the *retirement* of a municipal court judge, and the argument was made, as it is here, that a literal application of section 71180 might preclude elections, and hence thwart the public will and democratic expression respecting certain judicial offices. The *Barton* court, while conceding the pragmatic possibility that section 71180 might cause such consequences, nevertheless found in the statute a valid legislative purpose. As the court observed, while it is true that the Governor's power to appoint up to the date of an election might have the effect of discouraging potential candidates, a countervailing consideration is that a prospective appointee, before resigning from the bar and quitting a law practice, career, or, as here, public office, should be afforded an opportunity to demonstrate judicial qualifications over a reasonable period of time before being required to face an election contest. (Cf. *Barton v. Panish, supra,* 18 Cal.3d 624, 627-628.)

Appellant also cites *Pollack v. Hamm* (1970) 3 Cal.3d 264, [90 Cal.Rptr. 181, 475 P.2d 213], in support of his position. There, the Governor appointed a *superior court* judge to a vacancy created by the prior incumbent's resignation. The appointee died, and petitioner, his successor-appointee, sought to prohibit the registrar from holding an election on the theory that the death of his predecessor had created a *new* vacancy so that California Constitution, article VI, section 16, sub-

division (c), precluded an election. That section reads as follows: "Terms of judges of superior courts are 6 years beginning the Monday after January 1 following their election. A vacancy shall be filled by election to a full term at the next general election after the January 1 following the vacancy, but the Governor shall appoint a person to fill the vacancy *temporarily* until the elected judge's term begins." (Italics added.)

In holding that appointment of petitioner—the second appointee —merely reopened the original vacancy and did not therefore operate to postpone the election, the court construed a constitutional provision which on its face applies to *superior,* not municipal, court judges, and is hence inapplicable to the present case.

The Legislature had and has the undoubted power to enact parallel rules governing municipal and superior court elections, but has chosen not to do so. The court in *Barton* v. *Panish, supra,* 18 Cal.3d 624, 630, observed: "The 10-month limitation of section 71180 is absolute on its face, containing no exception for when the appointment occurs after close of the filing period. While consideration of the interests of both electorate and candidates may call for such exception by legislative intervention, *the power of this court is to do no more than construe statutes as written."* (Italics added.)

## II

Appellant makes a second contention that the trial court "erred in not ruling that the appointment of Judge Buffington when there was no vacancy in Office No. 2, was void...."

It is true that the office was not vacant but occupied on the date of the appointment. The question then becomes, whether the Governor may make an appointment to judicial office in anticipation of an *impending* vacancy. Neither the appellant nor the Attorney General has cited, nor has our own research disclosed, any California statutory or case authority directly controlling the issue.

In *Tappy* v. *State* (Fla. 1955) 82 So.2d 161, 166, the general rule is stated to be that, "A prospective appointment is valid if the governor who makes the appointment *is still in office at the time the vacancy occurs and the commission becomes effective.* As the general rule is stated by an eminent text writer: 'A prospective appointment to fill an

anticipated vacancy in a public office, made by a person or body which, *as then constituted,* is empowered to fill the vacancy when it arises, is, in the absence of express law forbidding it, a legal appointment and vests title to the office in the appointee. Thus where a public officer resigns his office to take effect at a future day, and his resignation is accepted, the appointing power being, as then organized, authorized to fill the vacancy when it shall occur, may appoint a successor, the appointment to take effect when the resignation becomes operative.' Mechem on Public Offices and Officers, pp. 66, 67, Section 133."[2]

We believe the general rule to be a sound one, and have found in appellant's argument and citation of authority no compelling reason to adopt a contrary rule that the Governor lacks the power to appoint to an office which, as respondent notes, is "temporarily occupied by a departing incumbent, where it is reasonably certain that the office will be vacated prior to the appointing authority's power to appoint."

Appellant cites a number of California cases which in his view militate against the Governor's power to make prospective appointments. In *Rosborough* v. *Boardman* (1885) 67 Cal. 116 [7 P.261], petitioner filed a petition for a writ of mandate to compel the respondent county auditor of Alameda County to draw a warrant in payment of petitioner's salary as county assessor—an office to which the board of supervisors had appointed petitioner at a time when, since the statute creating the office had not become effective, the office did not exist. As respondent here points out, since no vacancy was deemed to exist in the newly created office, that office could only be filled initially by election although subsequent vacancies could be filled by appointment of the board.

By implication, the *Rosborough* court held that, even if the office had been in existence, the board lacked authority to fill it by appointment, since it had only the authority to fill vacancies as specified in former Political Code section 996.

We think *Rosborough* is distinguishable, because in the case at bench there was no question as to the existence of a municipal court office, the eligibility of real party in interest, or the general authority of the Governor to appoint to that office.

---

[2]Appellant is correct in asserting that the 1978 revision to 67 Corpus Juris Secundum section 30, cited by respondent, makes no mention of such "general rule"; but see section 40 thereof, quoted above, where the *general rule* is restated.

*People* v. *Ward* (1895) 107 Cal. 236 [40 P.538], also cited by appellant, in our view merely reaffirms the general rule, albeit in negative form. The successful candidate had been elected to that office for a two-year term that was to commence January 7, 1895. On December 15, 1894, he died and the board thereupon purported on January 2, 1895, to appoint the incumbent to fill the term that was to commence in five days. Under then applicable law, the incumbent was entitled to hold office until January 7 and then to continue in office "although his term has expired until his successor has qualified."[3]

As in the case at bar, the vacancy was certain to arise, but was one which could only take effect *during the term of the successor.* The court stressed that "We are not, therefore, here concerned with the question of the power to appoint to fill an anticipated vacancy by the person or body which, as constituted, is authorized to fill the vacancy when it occurs, but solely with the question of an appointment made to fill a prospective vacancy, which will arise at a time when there will have been a change in the appointing power." (107 Cal. at p. 242.)

On these facts, the court held the board lacked power to fill a vacancy: ". . . to arise *in futuro* during the term of its successor." (*Id.* at p. 242.) In our view, therefore, *Ward* merely recognizes the rule that a public officer with power of appointment "cannot forestall the rights and prerogatives of his. . . successor by making a prospective appointment to fill an office where the appointee's term is not to begin until the appointing power's own term has expired." (Annot., Public Officer —Power to Appoint, 75 A.L.R.2d p. 1281, § 2.)

In *Caldwell* v. *Bruning* (1966) 64 Cal.2d 111 [48 Cal.Rptr. 849, 410 P.2d 353], petitioner was appointed a municipal judge, after his (elected) predecessor resigned prior to commencement of his term. On the date the predecessor's new term would have commenced, petitioner was reappointed. Under applicable statutes, an appointee was to hold office until his successor was elected and qualified. Accordingly, the second appointment was void, because at the time it was made "[N]o vacancy existed in the office held by petitioner nor was the office deemed to be vacant. This interpretation is consistent with the general policy that once appointed, judges may not be involuntarily removed from office by the Governor, for if a second appointment were authorized, the Governor could appoint some other person at the expiration of the term and, in effect, remove the original appointee." (64 Cal.2d at p. 116.)

---

[3]Former Political Code section 879.

Since *Caldwell, supra,* does not involve the question of prospective appointments, it provides no support for the assertion that California has not followed the general rule.

Additional factors compel the conclusion, on the facts before us, that affirmation of the executive's power to appoint prospectively is proper. As respondent notes, "on the date real party assumed the duties of office, the office was admittedly vacant and there is no dispute as to the Governor's authority to appoint at that time." (*Cook* v. *State* ex rel. *Reeves* (1971) 287 Ala. 412 [252 So.2d 71].)

Moreover, Office No. 2 was vacant on the date real party's appointment became effective, since on that date—May 22, 1978—Judge Truitt had taken an (incompatible) oath as superior court judge, and on that date Truitt's resignation became effective.[4] (Cf. Cal. Const., art. XX, § 3; *Pollack* v. *Hamm, supra,* 3 Cal.3d 264, 270.)

■ We therefore hold that unless expressly forbidden by statute, the Governor is empowered to make an appointment to judicial office to fill an impending vacancy, provided he or she is still in office at the time vacancy occurs and the commission becomes effective. (*Tappy* v. *State, supra,* 82 So.2d 161, 166.)

The judgment denying the petition for a peremptory writ of mandate is affirmed.

Elkington, Acting P. J., and Grodin, J., concurred.

---

[4]We reject appellant's argument that, since Truitt's resignation was improperly submitted to the Secretary of State rather than to the Governor, no vacancy existed on the date of Buffington's appointment as being "an exaltation of form over substance," especially in view of the actions taken by the Governor indicating knowledge and acceptance of the resignation.